**Henry Thomas McCORMICK, Movant,**

v.

**Sandra Jean McCORMICK, Respondent.**

Supreme Court of Kentucky.

Nov. 24, 1981.

John J. Ford, Ford, Klapheke & Meyer, Louisville, for movant.

Eugene L. Mosley, Nold, Mosley, Clare, Hubbard & Rogers, Louisville, for respondent.

## OPINION OF THE COURT

This is an appeal from a civil case in which the Jefferson Circuit Court determined that it had jurisdiction to order an increase in child support. On appeal to the Court of Appeals the judgment was affirmed. We now reverse.

The facts of the case may be simply stated. Mr. and Mrs. McCormick were granted a divorce in the Jefferson Circuit Court on February 2, 1968. Shortly thereafter Mr. McCormick moved to Georgia, where he has maintained permanent residency to this day.[1] In 1975 Mrs. McCormick and the couple's two children moved to Louisiana and established permanent residency.

Between 1968 and the date on which the current action was init'ated Mr. McCormick voluntarily submitted to this state's jurisdiction on three separate occasions concerning changes in custody or child-support payments. Both parties agree that Mr. McCormick has at all times been prompt with the support payments for his children. We view these past voluntary submissions to

---

1. The evidence indicates that Mr. McCormick is presently living in New York because his employment requires him to do so. However, he still considers Georgia to be his place of permanent residency and domicile.

the jurisdiction of the Jefferson Circuit Court as evincing a willingness to cooperate with and act fairly toward his former wife and children rather than an act which now should estop Mr. McCormick or prejudice his right to question the jurisdiction of that court.

We have in the past expressed the view that courts of this Commonwealth have continuing jurisdiction to modify support orders originally entered here. See *Benson v. Benson*, Ky., 291 S.W.2d 27 (1956).[2] In *Hall v. Hall*, Ky., 585 S.W.2d 384 (1979), we held that jurisdiction to decide child-support issues is not subject to the strict limitations placed on the exercise of jurisdiction over child-custody questions. It is axiomatic that we should provide a forum for those seeking to modify child-support awards when there is a fair justification or legitimate reason for us to do so. However, there comes a time when the contacts between this state and the parties become so attenuated that we cannot arguably be a convenient forum for entertaining the dispute.[3]

While there is no comparable statute governing child support, the factors set forth in the child-custody statute, KRS 403.-420, offer instructive guidelines for determining this state's interest in assuming jurisdiction. KRS 403.420 provides that a court of this state has jurisdiction to make a child-custody determination by initial or modification decree if (1) this is the home state of the child and one parent, or (2) it is in the best interest of the child that this state assume jurisdiction because the child and his parents or at least one parent has a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection training, and personal relationships, or (3) the child is abandoned, neglected or abused in this state, or (4) it appears that no other state would have jurisdiction under (1), (2), or (3) above,

or that another state has declined jurisdiction because this state is the more appropriate forum.

The jurisdictional requirements of KRS 403.420 were enacted to remedy a particularly odious practice unique to the area of child custody.[4] However, in the interest of common sense the same factors must be considered in determining whether this state's courts should exercise jurisdiction in an action for the modification of child support. When the various jurisdictional factors are examined in relation to the case at hand, it becomes clear that Kentucky has no contacts independent of the fact that the original divorce and support orders were entered here. We have no reason to believe that the state of Mr. McCormick's residency, or possibly Mrs. McCormick's, would not have or would refuse to accept jurisdiction. Both states have significant contact with or an interest in one or more of the parties. In *Hall*, supra, an out-of-state custodial parent initiated an action for an increase in child support in the Hardin Circuit Court against the non-custodial father, a Hardin County resident. We said that:

> [c]ertainly it does no violence to traditional notions of fair play and substantial justice to require a person to defend a claim conveniently at home, where he has every reason to anticipate that he may be sued and where the state has a strong general interest in his economic health. *Shaeffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). At 386.

Applying that language to an opposite set of facts, we find that it does violate traditional notions of fair play and substantial justice to require that the appellant submit repeatedly to the jurisdiction of a Kentucky court for determination of an issue in which his state of residency or domicile has a great interest and in which we in fact have no interest at all.

---

2. The decision in *Benson* was based on KRS 403.070 which was repealed 1972 S 133, Sect. 29, effective 6/16/72.

3. We do not decide the issue of whether Kentucky has sufficient contacts to satisfy due

process under *Kulko v. California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

4. See *Simpson v. Simpson*, Ky., 586 S.W.2d 33 (1979).

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Full court sitting.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY and STEPHENSON, JJ., concur.

Dissenting opinion by STEPHENS, J.

STERNBERG, J., joins in his dissent.

STEPHENS, Justice, dissenting.

I respectfully dissent.

The parties' divorce became final on February 2, 1968. Shortly thereafter, movant established residence in Georgia. In April of 1975, respondent took the parties' two infant children and moved to Louisiana. Since movant's departure, both parties have voluntarily consented to four separate actions in the Jefferson Circuit Court, relative to and supplemental to the divorce judgment. They are as follows:

(1) June 4, 1971—entry of an agreement increasing child support;
(2) July 9, 1974—transfer of temporary custody of the younger child to father;
(3) April 21, 1975—agreed order returning custody of said child to mother;
(4) January 13, 1977—agreed order increasing child support.

The latter two agreed orders were made after both parties had terminated their Kentucky residence.

On August 9, 1978, approximately seventeen months after the final joint voluntary appearance by both parties, respondent filed a motion for an increase in child support. This is the vehicle which has brought the present controversy before us.

Since the divorce was granted, movant has lived in Georgia, moved to and worked in New York while allegedly maintaining his residence in Georgia, and more recently, has moved to and worked in California while allegedly still residing in Georgia.

The majority of the Court has declared that the Kentucky court is no longer a "convenient forum" for hearing the motion to increase child support. In so doing, the Court has, in this case, placed an outer limit

to the continuing jurisdiction of the Kentucky courts to decide child support matters authorized in *Benson v. Benson*, Ky., 291 S.W.2d 27 (1956) and *Hall v. Hall*, Ky., 585 S.W.2d 384 (1979).

As a basis for the termination of jurisdiction, the Court relies on an analogy to the child custody statute, KRS 403.420. I do not agree. That statute was enacted as an anti-kidnapping measure, and is a creation of the legislature. The wrongs intended to be prevented there, in my opinion, are not and should not be controlling in this case which is a policy decision to be made by this Court.

Under the terms of the child custody statute the Kentucky courts are to decline jurisdiction wherever possible, in order to prevent parents from kidnapping their own children and bringing them to Kentucky for a new adjudication of custody rights. The best interests of the child are served, in the legislature's judgment, by declining jurisdiction in such cases. In child support cases, by contrast, the jurisdictional considerations are quite different. What could be more important to the welfare of the child than providing adequate child support? To this end the legal forum for providing such support should be one which is readily accessible to the custodial parent. This clearly serves the best interest of the child.

In declaring Kentucky a non-convenient forum, the majority has not held that the classic "minimum contacts" standard of due process declared in *Kulko v. Supreme Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), has not been met. It is clear to me that, under *Kulko*, the four joint voluntary appearances of movant and respondent, following the entry of the divorce judgment, were more than sufficient to fulfill the due process requirement of minimum contacts necessary to retain jurisdiction in Kentucky. There is a serious question in my mind whether the Kentucky courts have the power to decline jurisdiction in such cases, absent a special statutory scheme such as that created for child custody cases.

Up to seventeen months prior to the present motion the movant had voluntarily

chosen Kentucky as a proper forum for matters relating to custody and child support. Under the tests of *Kulko, supra,* the courts of this state undoubtedly have retained jurisdiction. If we decide to eliminate jurisdiction, in which state will the custodial parent obtain jurisdiction over this peripatetic father? In Georgia, in New York, or in California, or somewhere else?

I would affirm the decision of the Court of Appeals.

I am authorized to state that STERNBERG, J., joins me in this dissent.